IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

John Doe,                                    :

                    Plaintiff               :        Civil Action 2:11-cv-00453

    v.                                      :        Judge Watson

Ronald Bone, *et al.*,                      :        Magistrate Judge Abel

                    Defendants              :

## Report and Recommendation

This matter is before the Magistrate Judge on plaintiff John Doe's January 30,

2012 motion for default judgment against Ronald Bone (doc. 30). Defendant Ronald

Bone was served with summons and complaint on July 28, 2011. Defendant Bone failed

to respond to the complaint, and on November 28, 2011, the Clerk of Court entered

default against Bone. Defendants Michael Pelegreen, William Decker, and the Village of

Hopedale ("Village of Hopedale defendants") oppose plaintiff's motion.

The Court referred this matter for a hearing and report and recommendation. On

June 21, 2012 a hearing was held before the Magistrate Judge for plaintiff to establish a

*prima facie* case of liability and to prove his damages by a preponderance of the

evidence.

<u>Default Judgment</u>. If a defendant who is served with summons and complaint or

who waives service fails to timely answer or otherwise respond to the complaint,

plaintiff may request and the Clerk of Court will normally enter default. Rule 55(a), Fed. R. Civ. P. The Clerk may enter judgment only "[w]hen the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain . . . ." *Id.*

When a defendant is in default, plaintiff's well-pled factual allegations relating to liability are normally accepted as true. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995); *Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich 1983). On the other hand, allegations as to damages are not accepted as true. *See Antoine,* 66 F.3d at 110; *Kelley*, 567 F. Supp. at 841; *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). "Ordinarily, the District Court must hold 'an evidentiary proceeding in which the defendant has the opportunity to contest the amount [of damages].'" *Antoine,* 66 F.3d at 110 (quoting *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158).

Rule 55(b)(2) provides that a court may hold a hearing on a motion for default judgment when "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter . . . ." When a motion for default judgment is filed and the affidavits supporting the motion are insufficient for the Court to determine damages, the District Judge usually refers the motion to the Magistrate Judge for a

hearing at which plaintiff has the burden of proving damages by a preponderance of the evidence.  The Court may also require a *prima facie* showing of liability.  *See, Moore v. United Kingdom,* 384 F.3d 1079, 1090 (9th Cir. 2004); *Ramos-Falcon v. Autoridad de Energia Electirica,* 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales,* 953 F.2d 15, 16 (1st Cir. 2002); *TeleVideo System, Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir. 1987); *Doe v. Qi,* 249 F.Supp.2d 1258, 1272 (C.D.  Calif. 2004); *In re DIRECTV, Inc.*, 2004 WL 2645971 (N.D.Cal. July 26, 2004).

<u>Hearing Testimony</u>. Plaintiff John Doe testified that he was 21 years old and lived in Toronto, Ohio. He used to live in the Village of Hopedale. Prior to that he lived in Cadiz, Ohio. Doe met Bone because he was friends with his parents. Bone was a police officer in Cadiz. When Doe moved to Hopedale, Bone was the police chief. Doe began doing police ride-alongs with Bone. Doe's  grandfather had been a cop, so Doe had asked Bone about the cadet program. Bone instructed Doe to fill out a waiver. Doe signed a waiver at a later time.

Prior to December 2008, Doe would do ride-alongs with Bone two to three times a week. During ride-alongs, Bone would pull over cars and do service calls. Doe also saw Bone when he stopped by for birthday parties or to drink coffee on the porch.

The first time that Bone behaved inappropriately toward Doe occurred at his house at 402 Penn Central in Hopedale. Bone was on duty and in his uniform when he groped Doe's genitals. His mom was present. The next occurrence took place at Bone's house. Does was helping Bone move and unpack boxes. Bone asked if Doe wanted to

watch television. Bone started touching him through his pants, and Doe asked him to stop. They went back and unpacked more boxes. At that time, Bone was wearing his street clothes, and his duty belt was hanging on the chair. Bone told Doe not to tell anyone or he would make his life a living hell.

The next incident occurred when Bone and Doe were in his police car running radar in front of the city garage. Bone unzipped Doe's pants and started touching him. Bone was in his police uniform and had on his gun and badge. Bone was on-duty. Doe asked him to stop.

The next instance occurred in the city building in Bone's office. Bone said he had to file a report. This instance occurred while Doe was participating in the ride-along program. Bone looked up pornography sites on his computer. He also had a camera with people having sex on it. Bone put his duty belt on the desk and started touching Doe. Bone told Doe to bend over and raped him. Bone made Doe make him ejaculate him on the floor. Bone told him not to tell anyone or he would get in big trouble and would make his life a living hell. Bone was wearing his uniform and on duty.

The next occurrence took place when Bone asked him to help him clean up his desk. Bone started touching him. Bone made him masturbate him and wanted Doe to perform oral sex on him. This occurred while Doe was participating in the ride along program and Bone was on duty. Bone received a call, and they went to a person's house.  Doe waited in the car.

The next time occurred when Doe was participating in the ride-along program. Bone and Doe rode around for a few hours and went to the cemetery. Bone started touching him through his pants. Doe pushed his hand away, and Bone said I wouldn't do that. Bone was in the cruiser, on-duty, and in uniform when this happened.

When his parents went on vacation, they asked Bone to watch him. Bone helped Doe put sheets on the bed. Bone forced Doe to engage in anal sex. Bone's duty belt was hanging on his bedroom door.

Since this began, Doe testified that he felt like a piece of crap. He believes he can not do anything right. He does not trust anyone. The abuse has affected his relationships with his family. He fought with his family and told people to stay away. He locked himself in his bedroom. He has had nightmares and lost sleep. He withdrew from his friends. He hates himself. He no longer wants to associate with anybody.

Doe testified that he did not participate in the sexual activity voluntarily. Bone was the chief of police, and Doe thought Bone would shoot him or arrest him or his family if he didn't do what he was asked.

Doe left the Village of Hopedale because his mom was having problems, and he wanted to get out. Doe no longer was participating in ride-alongs because the Village council was upset with Bone. Doe moved to Toronto, Ohio. One day he told his girlfriend what had happened, and his girlfriend told his mom. Doe talked privately with his mom and told her what happened. His sister Maggie came in. Doe had been afraid to tell them afraid because he thought that they would think he was gay.

Doe reported the assaults to Ohio Bureau of Criminal Investigation. At that time, he went to Jefferson County Vocational School. His classmates found out about the abuse and started calling him names like Peter Puffer and faggot. They said he was gay. What happened to him became common knowledge. A number of student confronted him. Doe wanted to quit school.

Doe had to go to the hospital twice. He had been having really bad chest pains and flashbacks. He was diagnosed with anxiety. The second time he had to go to the hospital was also because of chest pains. Plaintiff sought psychological counseling at Jefferson Behavioral Health. He was prescribed Depakote, Celexa, Safra, and Zoloft.

Doe still has a lot of pain. He started crying and had flashbacks anytime Bone's name was mentioned. He also experienced flashbacks when he went to Hopedale, saw a cop, or went to a cemetery. Although he still has flashbacks, they are not as bad. He still had nightmares sometimes and lost sleep. His experience has affected his temperament. Now, he fights and cusses at people. He has gained a lot of weight because there is no sense in trying to look nice. He tried to make himself feel better by eating. He recently learned that he is going to be a father of a son. He is scared that his son might find out about the abuse and that his son will think that he is gay or that Doe might hurt him.

Margaret Cassell, John Doe's 29 year old sister, also testified. Cassell testified that while growing up, Doe and she were very close. She took care of him and knew him very well. She described Doe's personality as happy go lucky. He played football and baseball. He was social and active. She moved out when she turned 18 years old, but

she still saw him regularly, once a week. She noticed Doe was changing around the end of 2009. He wouldn't laugh or joke, and he didn't want to hang out. He stayed in his room and wouldn't go out. He was very different. He didn't talk to her about what was happening to him.

Doe moved to Toronto. One day, he came home from school with his girlfriend. He told his mom and her. He was shaking and crying hysterically. He was a mess. Prior to the abuse, he was not easily angered. He was pretty laid back. Now, he is not easy to talk to, and he gets angry easily. He is very irritable. He still doesn't hang out with them. Although he has improved since he told them, he still gets anxious. He is a different person than he used to be.

Dr. Susan Cox, plaintiff's expert witness, also testified. Dr. Cox has a masters degree and Ph.D. in clinical psychology from Kent State University. She completed her dissertation on the relationship between offenders and victims. For the last 19 years, she has worked in private practice. She does occasional court work. Her primary practice involves treatment of victims of sexual abuse. She has treated at least several hundred individuals. The overwhelming majority of her patients were abused as a child.

She evaluated Doe on June 8, 2012 in her office in Albany, New York for four hours. Doe talked about his life before and after the assaults. In her clinical opinion, Bone groomed and cultivated a relationship in order to sexually abuse him. His conduct fits a general pattern for a pedophile grooming a victim. It is very common for victims of sexual abuse to not tell anyone what is happening. It often takes years for the victim

to report it. This is known as child abuse accommodation syndrome, and it allows pedophiles to abuse victims repeatedly.

Doe was very frightened because Bone used threats and intimidation and confused it with attention and affection. This is very confusing for a child. Most children try to block it out or repress it. When Doe finally moved away, he was able to tell someone about the abuse.

When the abuse is violent and repetitive, victims typically experience post-traumatic stress disorder, fear, helplessness, powerlessness, intrusive images, and intense psychological and physiological reactions. They have anger problems and trouble sleeping. The avoid stimuli associated with the trauma. Victims also may have numbing or disassociation.

There are four factors to consider in terms of the severity of the abuse: (1) level of violence and intimidation, (2) frequency, (3) extent and range of activities, and (4) nature of relationship. Dr. Cox's clinical conclusion is that Doe has active post-traumatic stress disorder. Her diagnosis is based on a trauma symptom checklist and the Diagnostic and Statistic Manual VI, Revised of the American Psychiatric Association. Doe has many clinical symptoms, including increased appetite and weight gain, self-loathing, and diminished interest in activities.

Doe still has active and debilitating post-traumatic stress disorder and needs ongoing psychotherapy and medication management. Treatment can help him, but he will struggle periodically throughout his life. Treatment for post-traumatic stress

disorder costs tens of thousands of dollars a year. In the absence of treatment, his future prognosis is poor. Doe's ability to trust is impaired. It would be difficult for him to be told what to do, particularly if there is an element of exploitation. He feels guilt and shame about not being able to make it stop. As a result, Doe may overreact to legitimate authority.

Arguments of the Parties. Defendants William Decker, Michael Pelegren, and the Village of Hopedale ask that the Court deny plaintiff's request for default judgment. Defendants argue that a defendant's failure to respond to a complaint does not automatically entitle a plaintiff to default judgment. When a defendant fails to respond to a complaint, a plaintiff's factual allegations are accepted as true, but conclusions of law are not. The Court must ensure that the allegations in the complaint actually state a substantive cause of action and that there is a substantive and sufficient basis for the relief sought.

Defendants argue that plaintiff cannot demonstrate that he is entitled to default judgment against defendant Bone. Defendants argue that although the complaint refers to Bone's conduct as "sexual assault," "molestation," and "rape," these references constitute legal conclusions that are not admitted as true. Defendants also argue that the complaint does not contain factual allegations sufficient to demonstrate that Bone's conduct was "under color of law." Despite the allegations that defendant Bone assaulted plaintiff while on duty and in his police uniform, defendants maintain the allegations do not sufficiently establish that Bone acted under color of law. Defendants

maintain that a defendant's private conduct, outside the course of scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. Defendants maintain that the allegations in the complaint suggest that Bone's sexual relations with plaintiff represented his private conduct and were not undertaken under color of law. The complaint alleges that Bone was friendly with Doe's mother and step father and would routinely stop by his home during this time and invite plaintiff to participate on ride-alongs. Defendants maintain that these facts suggest that Bone's relationship reflected private conduct. Defendants argue that Bone's conviction also supports a finding that his conduct was not under color of law. Bone was found guilty of engaging in sexual conduct with plaintiff while Bone was a person in loco parentis in violation of Ohio Revised Code § 2907.03(A)(5) and while he was a person with temporary and or occasional disciplinary control over Doe in violation of Ohio Revised Code § 2907.03(A)(9).

In the alternative, defendants argue that the Court should delay any default judgment until final adjudication of the claims against the remaining Village of Hopedale defendants. Defendants maintain that federal courts have consistently adopted this approach in multi-defendant cases. Delaying entry of default judgment in multi-defendant cases avoids logically inconsistent judgments and protects those defendants not in default. Defendants argue that plaintiffs claims against them is directly related to plaintiff's claim against Bone. Plaintiff's claims against defendants fail if plaintiff cannot establish that Bone violated his constitutional rights. Defendants

contend that they have a right to defendant against plaintiff's allegations related to Bone's alleged conduct.

In response to defendants, plaintiff argues defendants' attempt to cast Doe's interaction with Bone as consensual was forfeited by Bone when he failed to contest the allegations in the complaint. The complaint alleges that Bone raped defendant, and when a party fails to defend, the plaintiff's well-pled factual allegations are normally accepted as true.

Plaintiff also argues that the cases relied upon by defendants to demonstrate that default judgment should be delayed in multi-defendant actions can be distinguished from this case. Default judgment is only delayed in cases where there is a risk of inconsistent adjudications because, under the theory of the complaint, the liability of all the defendants must be uniform. Plaintiff maintains that there is no such risk of inconsistent adjudications given the differences in the claims brought against the Village of Hopedale defendants and Bone. The claims against Bone can be severed from the claims against the remaining defendants. It is possible for Bone to be held liable for the violation of plaintiff's constitutional rights and for the remaining defendants to be exonerated because their acts and omissions do not meet the standards necessary for municipal  or supervisory liability.

<u>Discussion</u>. Defendants argue that the Court should refrain from granting plaintiff's motion for default judgment against Bone until final adjudication of the claims against the remaining Village of Hopedale defendants. According to defendants,

federal courts have consistently adopted this approach in multi-defendant cases. Rule 54(b) of the Federal Rules of Civil Procedure, however, permits a court to enter judgment with respect to some but not all of the parties under certain circumstances:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, *the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay*. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b)(emphasis added).

Here the Village of Hopedale defendants argue that entry of judgment would risk inconsistent adjudications on the issue of whether Bone acted under the color of law. The cases relied upon by defendants differ significantly from the claims asserted by plaintiff against the defendants. There are certainly instances where granting a default judgment against one defendant would give rise to the risk of inconsistent adjudications. In *Frow v. De La Vega*, 82 U.S. 552, the plaintiff alleged that Frow and thirteen other defendants entered into a joint conspiracy to defraud him. The thirteen other defendants filed a timely answered. Frow's answer was delayed, and the Court enter a final judgment against him. The action proceeded on the merits against the other defendants, who ultimately prevailed. The Supreme Court held:

The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike–the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

*Frow v. De La Vega*, 82 U.S. 552, 554 (1872). Courts applying the *Frow* rule have recognized it as a narrow one that applies when the liability of the defendants is joint. *See, e.g., Martin v. Coastline Coal Corporation*, 857 F.2d 1474 (6th Cir. 1988). In *Liberty Mutual Insurance, Co. v. Petit*, No. 2:09-cv-111, 2009 WL 3241670 (S.D. Ohio 2009), Karol Petit died as a result of car accident in which her husband, Larry Petit, was the driver. Ms. Petit's children and her estate filed suit against her husband for negligence and wrongful death. Default judgment was entered against Larry Petit. The children and the state notified the insurance company of Larry Petit's employer of their claim. The insurance company instituted a declaratory judgment action contending that Larry Petit was not an insured under the policy. Larry Petit failed to respond to the complaint and default was entered. The court declined to grant default judgment against him because it could impair the rights of the other defendants who were not in default. The court concluded that a finding that Larry Petitt was not an "insured" must apply to all of the

defendants or to none of them and that granting default judgment would create the potential for logically inconsistent judgments.

In *Phoenix Renovation Corp. v. Gulf Coast Software, Inc.,* 197 F.R.D. 580, the court declined to enter default judgment against defendant while arbitration of plaintiff's claim against the other defendant was ongoing even though the complaint was not pleaded in terms of formal joint liability. The plaintiff's theory of recovery against the defaulting defendant was largely subsumed by its theory of recovery against the remaining defendant, and the theory of recovery against both defendants was premised on common facts. As a result, the court concluded that entry of default judgment against one defendant could result in inconsistent judgments.

Here, the factual allegations against defendant Bone and the Village of Hopedale defendants differ. Plaintiff's claims against Bone rely on his sexually assaultive conduct. Plaintiff does not allege any sexual misconduct on the part of the Village of Hopedale defendants. While it is true that the Village of Hopedale defendants cannot be found to have violated plaintiff's constitutional rights if there was no underlying constitutional violation by defendant Bone, a finding that Bone violated plaintiff's constitutional rights does not mean the Village of Hopedale defendants did as well. Bone has chosen not to contest plaintiff's claims against him, the Village of Hopedale defendants do contest them. Bone's decision not to contest that he was acting under color of state law is not binding on the Village of Hopedale defendants.

Defendants maintain that they should be able to defend against plaintiff's allegations concerning Bone's conduct. Defendants maintain that Doe's allegations concerning the sexual contact between him and Bone are legal conclusions rather than factual allegations. Even though rape is criminal offense defined by statute, in these circumstances the allegation in the complaint that Bone raped Doe is a factual allegation and not a legal conclusion.

Defendants further argue that Bone's conduct was not under color of state law. The case relied upon by defendants, *Burris v. Thorpe*, 166 Fed. Appx. 799 (6th Cir. 2006), is materially different from this action. In *Burris*, the plaintiff participated in a citizen ride-along program with a police officer. During the course of seventeen months, the plaintiff engaged in a consensual sexual relationship with the police officer during eight to ten official ride-alongs and several "unofficial" ride-alongs. The plaintiff alleged that the officer, who was HIV-positive, violated her constitutional rights by engaging in sexual intercourse with her while he was on duty and while he knew that he was HIV-positive. The Sixth Circuit concluded that the police officer was not acting under color of state law and was not liable under § 1983. The Sixth Circuit considered the operative factor to be "whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law . . . *the acts of state officials in 'the ambit of their personal pursuits' do not constitute state action*." *Id.* (emphasis in original)(quoting *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). Neither the fact that the police officer is on duty or in his uniform is controlling. *Burris*, 166 Fed Appx. at 802.

> [A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. *See McNeese v. Vandercook,* 1999 U.S. App. LEXIS 3405, No. 97-6512, 1999 WL 133266, *2 (6th Cir. Feb. 25, 1999) (unpublished table decision) (holding that a deputy sheriff who struck a fellow deputy did not act under color of state law); *Mooneyhan v. Hawkins,* 1997 U.S. App. LEXIS 30223, No. 96-6135, 1997 WL 685423, *4 (6th Cir. Oct.29, 1997) (unpublished table decision) (*holding that a police officer did not act under color of state law when he took advantage of his friendship with the plaintiff, not his authority as a police officer, to rape her*); *D.T. by M.T. v. Indep. Sch. Dist. No. 16,* 894 F.2d 1176, 1188 (10th Cir.1990) (holding that a teacher who molested three students at a basketball camp during summer vacation had not acted under color of state law). For the purposes of a state-action analysis, there can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties. *See Zambrana-Marrero v. Suarez-Cruz,* 172 F.3d 122, 126 (1st Cir.1999).

*Burris v. Thorpe*, 166 F. App'x 799, 802 (6th Cir. 2006)(quoting *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001).

A state official acts under color of law when he acts either within or outside of the bounds of the authority given to him by the State. In order for an unlawful act of a state official to be done under color of law, however, the unlawful act must be done while the official is purporting to act in the performance of his official duties; that is to say, the unlawful act must consist of an abuse or misuse of power that is possessed by the defendant only because he is an official of the state. The unlawful act must be of such a nature, and be committed under such circumstances, that it would not have occurred but for the fact that the person committing it was an official purporting to exercise his official powers.

Here there is evidence that supports defendants' argument that Bone was not acting under color of law. There was a pre-existing relationship between Doe's family and Bone. The first two incidents occurred outside of the ride-along program. Doe's parents had Bone watch him while they were out of town, which also can't be said to be an exercise of his official responsibilities. Nonetheless, I conclude that the allegations in the complaint and the testimony of plaintiff at the hearing establish a prima facie case that defendant Bone was acting under color of state law. Entering default judgment would not impair defendants' opportunity to defend on the ground that Bone was not acting under color of law since they deny that he was, are not in default, and have the right to a jury trial on the issue.

The evidence supporting a finding of liability includes the fact that the first sexual contact occurred while Bone was wearing his uniform, although this fact is not dispositive, it supports the conclusion that Bone took advantage of his authority as a police officer to intimidate Doe, who was a minor at the time and susceptible to be intimidation by a person in authority. Doe inquired about the cadet program, and Bone used his position as the police chief to create the opportunity to victimize plaintiff. Plaintiff was subject to sexual assaults while participating in the ride-along program, either in Bone's police cruiser or his office. Additionally, Bone threatened to use his authority as a police officer to arrest plaintiff's parents if Doe refused. This is a clear abuse of the power granted to Bone by the state.

Because I conclude that plaintiff has made out a prima facie case that Bone acted under color of law when he sexually assaulted plaintiff and Bone has not contested the allegations in the complaint, I RECOMMEND that plaintiff's motion for default judgment against defendant Bone be GRANTED as to liability, but I FURTHER RECOMMEND that entry of judgment as to the amount of damages be delayed until after plaintiff's claims against the Village of Hopedale defendants are adjudicated. Plaintiff has failed to demonstrate that there is no just reason for delay in entering judgment. Bone is serving a prison sentence and is, in all likelihood, judgment proof at this time. If this case is tried to a jury and the jury were to return a verdict for plaintiff, their determination of damages would assist the court in determining the amount of defendants to be awarded plaintiff against defendant Bone. If the matter is resolved by settlement or summary judgment, the court can then proceed to make its own, independent findings regarding damages and enter judgment against defendant Bone.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

*Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).


                                                  <u>s/Mark R. Abel</u>
                                                  United States Magistrate Judge